# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 19-660** |
| **v.** | : | |
| **BOSKO MARKOVIC** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Bosko Markovic stands before this Court for sentencing on his conviction for conspiracy to possess with intent to distribute five kilograms or more of cocaine on a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70506(b), 70503(a) and 21 U.S.C. § 960(b)(1)(B), arising out of his participation in smuggling over 17,000 kilograms of cocaine onto the MSC Gayane, all of which was seized by law enforcement in 2019. This was the largest cocaine seizure in the 230-year history of U.S. Customs and Border Protection. Law enforcement experts estimated that the street value of the cocaine smuggled onto the MSC Gayane was over $1 billion U.S. dollars, and the large quantity of cocaine was consistent with a large-scale drug trafficking distribution network. Indeed, but for this seizure, the defendant's participation in this network would have continued to fuel the international cocaine market, would have allowed an untold number of high-level drug traffickers and criminal organizations to make significant profits, would have spread enormous quantities of this deadly drug throughout the world, and would have destroyed numerous lives through the violence and addiction that stems from cocaine trafficking.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory Guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.  "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)'  and the court fails to address it."  *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which, given the extraordinary nature of this case, support the imposition of a significant prison sentence for this defendant's international drug trafficking activities.

I.      **BACKGROUND**

On November 12, 2020, defendant Bosko Markovic was charged in an Information with conspiracy to possess with intent to distribute five kilograms or more of cocaine on a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70506(b), 70503(a)(1), and  21 U.S.C. § 960(b)(1)(B) (Count One).  This charge arises from the defendant's participation in a drug smuggling scheme onboard the Motor Vessel MSC Gayane beginning in or around early 2019 until on or about June 17, 2019, on the high seas, elsewhere, and in Philadelphia, Pennsylvania.  The defendant entered a guilty plea to the offense before this Court on February 25, 2020.  A sentencing hearing is scheduled for June 10, 2021.

II.     **FACTS**

On June 17, 2019, agents and officers from Homeland Security Investigations, Customs and Border Protection, United States Coast Guard, Pennsylvania State Police, Delaware State Police, Philadelphia Police Department, and others, conducted an enforcement boarding of the MSC Gayane, at Packer Marine Terminal in Philadelphia, Pennsylvania.  *See* Exhibit A, Photograph of Agents and Officers Boarding Vessel.  The MSC Gayane arrived in Philadelphia on the morning of June 17, 2019, from Freeport, Bahamas, laden with commercial cargo, destined for the United States and elsewhere.  The next port of call for the vessel was Rotterdam, Netherlands.

Upon searching the MSC Gayane, law enforcement discovered and seized approximately 19.76 tons, or over 17,000 kilograms, of cocaine concealed within seven separate shipping containers.  Samples from each of the seven separate shipping containers were submitted for chemistry analysis, which confirmed the presence of cocaine, a Schedule II controlled substance. *See* Exhibit B, Photographs of Hundreds of Cocaine-Filled Duffel Bags Inside the Containers.

The MSC Gayane is a large, commercial shipping vessel that holds thousands of shipping containers and transports cargo around the world.  The vessel was operated by a captain and more than 20 crew members, and stopped at ports in South America, Central America, and the Caribbean before arriving in Philadelphia on June 17, 2019.  *See* Exhibit C, Photograph of the MSC Gayane.

The defendant worked on board the MSC Gayane as the ship's chief officer.  The defendant, along with seven other crew members (co-defendants Ivan Durasevic, Vladimir Penda, Nenad Ilic, Aleksandar Kavaja, Stefan Bojevic, Fonofaavae Tiasaga, and Laauli Pulu), was involved in smuggling bulk cocaine onto the ship, at the direction of other co-conspirators outside the ship.  *See* Exhibit D, Redacted Photograph of Crew List for MSC Gayane.  The defendant and three other crew members were each recruited into this bulk cocaine smuggling scheme in their home country, Montenegro, prior to boarding the vessel.  While on the vessel, the defendant communicated with co-conspirators on land using a mobile "narco" phone to coordinate the bulk cocaine smuggling.  Four crew members, including the defendant, operated the "narco" phones and recruited other crew members while at sea to assist in physically bringing the cocaine onto the vessel and stashing the cocaine in the vessel's shipping containers.  As chief officer, the defendant was in charge of the cargo plan and helped choose the shipping containers in which the cocaine would be stashed.

On multiple occasions during the MSC Gayane's voyage and while at sea, crew members helped load the bulk cocaine (packaged inside duffel bags) onto the vessel from speedboats that approached the vessel at night.  Crew members used the vessel's crane to hoist cargo nets full of cocaine onto the vessel and then stashed the cocaine in the vessel's shipping containers.  *See* Exhibit E, Photograph of One of MSC Gayane's Cranes.  Crew members bent railings on the

ship and pulled back doors on the shipping containers so they could fit the bags of cocaine into the containers.  After hiding the cocaine among legitimate cargo, crew members used fake seals to reseal the shipping containers in which they had stashed the cocaine.  *See* Exhibit F, Photograph of Seal Used to Secure Container.  The defendant, along with the seven other crew members, was responsible for smuggling all of the over 17,000 kilograms, hidden in seven shipping containers, seized in this case.

Each of the eight crew members involved in this bulk cocaine smuggling scheme was arrested and pleaded guilty to conspiracy to possess with intent to distribute cocaine based on their participation in the scheme.

## III.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence

The maximum sentence that may be imposed is lifetime imprisonment, a mandatory minimum 10 years' imprisonment, a mandatory minimum 5 years of supervised release up to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment.

### B.    Criminal History Category

The government agrees with the Probation Office's calculation of the defendant's total criminal history score of 0 points, which places the defendant in Criminal History Category I.

### C.    Sentencing Guidelines Calculation

The government also agrees with the Probation Office's guidelines calculation.  As the parties also stipulated in the guilty plea agreement, the base offense level is 38, pursuant to USSG § 2D1.1(c)(1), because the defendant is accountable for a drug quantity of over 450 kilograms of cocaine.  The defendant receives a 2-level decrease because he meets the criteria outlined in USSG § 5C1.2.  He also receives a 2-level decrease for acceptance of responsibility

and an additional 1-level decrease for his timely guilty plea, pursuant to USSG §§ 3E1.1(a) and (b).  This results in a final offense level of 33, making the defendant's advisory sentencing guideline range 135 to 168 months' imprisonment.

## IV.   <u>ANALYSIS</u>

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that a significant sentence of imprisonment is appropriate.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original).  "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084.  "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

    **A.**    **Consideration of the 3553(a) Factors**

        1.   The nature and circumstances of the offense

The defendant's offense is very serious.  He was involved in an international drug trafficking conspiracy whose goal was to smuggle over 17,000 kilograms of bulk cocaine from South America to Europe—through the United States—for distribution and sale throughout the world.  This defendant's conduct was an attack on U.S. border security, as he and his co-conspirators attempted to smuggle and conceal these drugs through one of the country's busiest ports of entry in Philadelphia.  The sheer quantity of drugs involved in this case is astronomical—nearly 3,400 times the drug quantity that triggers the highest statutory maximum and mandatory minimum penalties for drug trafficking offenses.  If law enforcement had not intervened, the defendant's participation in this smuggling network would have continued to fuel the international cocaine market, allowing an untold number of high-level drug traffickers and criminal organizations to make significant profits.  Cocaine is a particularly dangerous, addictive, and deadly drug— and over 17,000 kilograms would have been destined for the streets and injected into communities throughout the world.  Violence often accompanies drug trafficking, as the criminals distributing the drugs must protect themselves, their drugs, and their drug money from others.  This is particularly so when dealing in large-scale quantities of drugs, like in this case, the distribution of which would have likely led to increased levels of violence in many areas around the world.

Moreover, because of the conduct of the defendant and his co-conspirators, international shipping of legitimate cargo was affected and delayed, and the lives and work of their law-abiding fellow crew mates were also negatively impacted as the MSC Gayane and its legitimate cargo were required to remain at port in Philadelphia and nearby Delaware for weeks after the seizure while law enforcement conducted its investigation.  Companies from around the world rushed to avoid spoilage or delays of their cargo on the MSC Gayane.

The defendant's role in the offense included operating a mobile "narco" phone to coordinate the bulk cocaine smuggling with others on land and recruiting other crew members while at sea to assist in the scheme.

      2.   <u>The history and characteristics of the defendant</u>

The defendant is 39 years old and a native and citizen of Montenegro.  He worked on board the MSC Gayane as the ship's chief officer and had been employed by the Mediterranean Shipping Company since 2008.  The defendant's crime and his participation in this international cocaine smuggling scheme was motivated by profit and greed.  He was earning approximately $9,000 per month at the time of his arrest, and he expected to make a very significant profit by helping to smuggle these drugs, which had an estimated street value of over $1 billion U.S. dollars.

      3.   <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment</u>

There is a strong need to impose a sentence that reflects the seriousness of this offense, promotes respect for U.S. laws, and provides just punishment.  Federal, state, and local law enforcement focus many resources on stemming the flow of deadly drugs into our country and waterways and trying to disrupt large-scale drug trafficking distribution networks and criminal organizations.  These criminal organizations, in which the defendant knowingly joined and

assisted through his conduct in this case, are often violent and their drugs deadly.  The United States is not alone in its battle against drug trafficking.  Indeed, countries throughout the world are plagued by drug traffickers and criminal organizations that spread this poison, and they are burdened by the social and human costs that flow from these crimes.  It is imperative, therefore, that the defendant's conduct be punished accordingly for his part in helping to distribute such significant quantities of these deadly drugs into communities throughout the world.

As mentioned above, this defendant's conduct was also an attack on border security, as he and his co-conspirators attempted to smuggle and conceal these drugs through one of the country's busiest ports of entry in Philadelphia.  Border security is critically important to U.S. national security.  Every violation of our borders by an individual like the defendant takes a toll on our country's resources and makes us more vulnerable to other border threats.  Only a significant sentence will promote respect for U.S. border security and our laws.

### 4. The need for adequate deterrence and protection of the public

The need for adequate deterrence of this type of crime is great.  The defendant did not work alone, as his group relied on a sophisticated network of individuals to supply, load, and conceal the drugs the defendant helped to smuggle through our borders.  Groups of drug traffickers acting together pose a tremendous threat to society because there is great power that lies in numbers, the ability to pool resources, and the ability to insulate and protect others in the group from law enforcement.  Given the prevalence of drug trafficking here and throughout the world, the need to deter others from similar crimes is particularly important.  The sentence should send a message to this defendant and others that such conduct will not be tolerated. Furthermore, the sentence will protect the public from further crimes by the defendant, for at least as long as he remains in prison.

5. <u>The need to provide the defendant with training, medical care or correctional treatment</u>

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or additional treatment that cannot be adequately addressed by the Bureau of Prisons during incarceration.

6. <u>The need to avoid unwarranted sentence disparities among similarly situated defendants</u>

While the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing. Reference to the guidelines, while carefully considering all of the 3553(a) factors and making an individualized assessment of the defendant, is the best available means of preventing the disfavored result of unwarranted sentencing disparities. Here, given the historic quantities of drugs that the defendant helped to smuggle around the world, there are few, if any, similarly situated defendants in other cases.

V.      **CONCLUSION**

For these reasons and any that may be presented at the defendant's sentencing hearing, the government submits that only a significant sentence—one that fully accounts for the scope and severity of the defendant's criminal conduct—is appropriate in this case.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


*/s Jerome M. Maiatico*
JEROME M. MAIATICO
ALEXANDRA LASTOWSKI
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing

Government's Sentencing Memorandum to be served by email upon counsel for defendant:

> Benjamin Cooper, Esq.
> The Cooper Firm
> 151 8 Walnut St., Suite 808
> Philadelphi4 PA 19102
> bcooperlawyer@gmail.com

> */s Jerome M. Maiatico*
> JEROME M. MAIATICO
> Assistant United States Attorney

Date: June 9, 2021